## S08A1448. SHEPPARD v. THE STATE.

(671 SE2d 830)

SEARS, Chief Justice.

The appellant, William Sheppard, appeals from his convictions for malice murder and the possession of a firearm during the commission of a crime stemming from the death of Neville Hall.[1] On appeal, Sheppard contends, among other things, that trial counsel provided ineffective assistance and that the evidence is insufficient to support his convictions. Finding no merit to Sheppard's contentions, we affirm.

---

[1] The crimes occurred on February 14, 2003. On May 10, 2005, Sheppard was indicted for malice murder, felony murder, and the possession of a firearm during the commission of a crime. On June 1, 2005, a jury found Sheppard guilty on all counts. The felony murder conviction was vacated as a matter of law, and on July 8, 2005, the trial court sentenced Sheppard to life in prison for malice murder and to five consecutive years for the possession offense. On August 1, 2005, Sheppard filed a motion for new trial, and on September 28, 2007, he filed an amended motion for new trial. On October 30, 2007, the trial court denied Sheppard's motion for new trial. On November 29, 2007, Sheppard filed a notice of appeal, and on May 8, 2008, the appeal was docketed in this Court. The case was subsequently submitted for decision on the briefs.

1. Dontaveous Wyman testified that, on February 14, 2003, Sheppard, who had long hair, took him, the victim, and Steven Johnson to a house at 1531 Wooten Road in Augusta, Georgia, in order to obtain some crack cocaine to sell to Wyman and Hall. Wyman and Hall drove to the location in Hall's white van, and Johnson and Sheppard drove in a gold Saturn. When they arrived at the new location, Hall and Wyman left the white van running, and all four of the men went to the backyard. According to Wyman, Sheppard asked Wyman and Hall how much cocaine they wanted. Hall responded that he wanted to buy about $100 worth. Wyman added that Sheppard went around the side of the house, returned with a flower pot, pulled a black handgun out of the flower pot, and shot Hall in the back of the head while he was counting his money. Sheppard told Wyman he shot Hall because Hall had "set up" Sheppard's brother, and Sheppard told Wyman to get in the car. Sheppard got in the back seat of the Saturn, Wyman got in the front passenger seat, and Johnson got in the driver's seat. They sped away from the scene of the shooting and, in doing so, almost ran over a man named Michael Wade. The trio drove back to the location where Wyman first saw Hall.

Michael Wade testified he had known Sheppard for a few years and had ridden in a gold Saturn with Sheppard and Johnson about 9:30 p.m. on the night of the crimes. Wade saw Sheppard with a black revolver that night and had seen Sheppard with the black revolver on other occasions. Wade testified that, shortly after 9:30 p.m., Johnson dropped him off at Alice Lovett's house on Wooten Road. Lovett's house was about seven houses from the house at 1531 Wooten Road. Wade added that, later that evening, when he was standing in Lovett's front yard with Lovett and some other friends, he saw a white van and Sheppard's gold Saturn stop at 1531 Wooten Road. Wade got on his bike and began riding it to the house. Wade testified that he heard a gunshot, saw Sheppard, who had long dreadlocks, jump in the back seat of the Saturn, and saw the Saturn speed off. Wade stated that the car forced him off the road. According to Wade, he went to the house and saw someone lying on the ground.

Brenda Givens testified that, at the time of the crime, she lived two doors down from the home at 1531 Wooten Road; that, on the night of February 14, 2003, she got off work about 11:00 p.m.; and that she was supposed to meet a co-worker, Cathy Bentley, at her house after work that night. Givens testified that, before going home, she had to take her cousin home, and that when she arrived at her house, Bentley was not there. Shortly thereafter, Wade came into her driveway, walked up to her car, and told her someone had been shot. Givens then went in her house and called 911.

Cathy Bentley testified that, after she got off work on February 14, 2003, she drove to Givens's home and parked on the street to wait for her. She got there about 10:30 p.m. and waited about 30 to 45 minutes, but Givens did not arrive in that time. Bentley saw a van and a small car drive up to a house two houses from Givens's house and saw four men go behind the house. Bentley then heard a gunshot, saw two men with short hair come around the side of the house and get into the car, and, a short time later, saw a third man, who had long dreadlocks, come around the side of the house and get into the car. Bentley said the third man appeared to have something in his hand. According to Bentley, the car then drove off, and a man on a bicycle came down the street and rode into the back yard of the house where she heard the shot. Bentley left the scene.

On February 16, 2003, police executed a search warrant of Sheppard's room, videotaped their search, and recovered certain items, including a .357 caliber bullet, a rifle bullet, and some small plastic bags. Forensic evidence showed that Hall was killed by a .38 caliber bullet that could only have been fired from a .38 caliber or a .357 magnum revolver and could not have been fired from a 9mm semiautomatic handgun. A detective testified that a flower pot was found at the scene of the shooting and that Hall's van was still running when the police arrived.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Sheppard guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Sheppard contends that trial counsel was ineffective in cross-examining Wyman about a prior crime to which he had pled guilty and in which Sheppard had been involved. When questioned about the crime, Wyman said, "I'll tell you about the whole situation. Me, Thomas Sheppard, and Neville Hall —." At that point, defense counsel interrupted Wyman and asked for a hearing out of the presence of the jury. Sheppard contends that, because trial counsel knew of Sheppard's involvement in the prior crime, it was ineffective assistance to question Wyman about the crime. We conclude, however, that, even if counsel provided deficient performance in pursuing this line of questioning with Wyman, Sheppard has failed to carry the prejudice prong of his ineffectiveness claim.[3] Given that the details of the prior crime were not presented to the jury and given the strength of the evidence against Sheppard, we conclude that,

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Strickland v. Washington*, 466 U. S. 668, 697 (104 SC 2052, 80 LE2d 674) (1984) (a court may bypass the question whether counsel's performance was deficient if it can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

even if counsel had not pursued this line of questioning, there is not a reasonable probability that the outcome of the trial would have been different.

Sheppard also contends that trial counsel was ineffective for failing to have and use at trial a statement that Wyman made to the police allegedly indicating that Sheppard used a 9mm gun on the night of the crimes. When trial counsel asked Wyman during cross-examination if he had told a detective that Sheppard had a 9mm gun, Wyman stated he did not "recall that" and did not know what type of gun Sheppard had, only that it was black. Because forensic evidence established that the murder weapon was a .38 caliber revolver, trial counsel, according to Sheppard, could have cast doubt on Wyman's credibility during cross-examination by handing Wyman his pre-trial statement and questioning him about it. We conclude, however, that Sheppard has failed to carry his burden to prove either prong of his ineffectiveness claim.

First, the record does not contain a copy of any statement by Wyman to the police. At trial, both Wyman and a police investigator acknowledged Wyman had made a statement, but both of them stated he did not provide the name of any type of weapon. At the motion for new trial hearing, trial counsel stated that he remembered such a statement being provided in discovery. Because Sheppard has failed to resolve the discrepancy regarding whether Wyman made a statement describing the gun as a 9mm, he has failed to carry his burden to show that trial counsel provided deficient performance by not having such a statement at trial in order to cross-examine Wyman with it.

Moreover, even if trial counsel provided deficient performance in his cross-examination of Wyman, Sheppard has failed to carry the prejudice prong of his ineffectiveness claim. Wade, who had known Sheppard for a number of years, saw Sheppard with a black revolver shortly before the crimes and had seen him with it on previous occasions. Thus, attacking Wyman's credibility about the type of weapon Sheppard possessed would have been of limited usefulness. As for Wyman's credibility, Wyman admitted he was a crack cocaine user, admitted he was using on the night of the crimes, and admitted he had stolen property before. Thus, apart from any inconsistency in the description of the gun, Wyman's credibility was impugned at trial. Given these factors and the strength of the evidence against Sheppard, we conclude that, even if Wyman made a statement telling the police that Sheppard's gun was a 9mm and even if trial counsel provided deficient performance in failing to use that statement at trial, there is not a reasonable probability that the outcome of the trial would have been different.

3. At trial, a police investigator testified he conducted a search of Sheppard's bedroom at his mother's house and recovered several different types of ammunition and some plastic bags. Sheppard did not object to this testimony. Later during the investigator's testimony, he played a videotape of the search and again testified about the specific ammunition and plastic bags. Sheppard contended the videotape contained irrelevant material such as a poster on his bedroom wall. Sheppard, however, did not object to showing the videotape of the ammunition and plastic bags found in the drawer, and the trial court ruled that the State could play the portion of the video showing those items. On appeal, Sheppard objects to the part of the videotape that showed the ammunition and plastic bags, but, as he did not raise an objection to this portion of the videotape at trial, he is barred from raising this issue on appeal.[4]

After the playing of the videotape, Sheppard objected to the introduction of State's Exhibit 25 containing the ammunition, and the trial court overruled the objection. On appeal, Sheppard contends the trial court erred in admitting the exhibit into evidence. Assuming Sheppard is not procedurally barred from raising an objection on appeal to the introduction of the exhibit[5] and assuming the trial court erred in overruling Sheppard's objection, we conclude any error was harmless because the investigator testified about the type of ammunition found in the drawer both during his testimony about the search and during his testimony about the videotape.[6]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 12, 2009.

*H. Lee Prescott, Jr.,* for appellant.

*Daniel J. Craig, District Attorney, Rebecca A. Wright, Madonna M. Little, Charles R. Sheppard, Assistant District Attorneys, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General,* for appellee.

---

[4] *Ruffin v. State,* 283 Ga. 87, 89 (656 SE2d 140) (2008).

[5] See *Cobb v. State,* 283 Ga. 388, 390 (658 SE2d 750) (2008) ("[a] party must object to evidence the first time it is offered").

[6] See *Navarrete v. State,* 283 Ga. 156, 160 (656 SE2d 814) (2008) (error in admitting evidence harmless where other legally admissible evidence of the same fact is admitted).