S11A0492. WHITE v. THE STATE.
(712 SE2d 834)

HINES, Justice.

Cornelius White appeals his convictions for malice murder, armed robbery, and possession of a firearm during the commission of a crime, all in connection with the deaths of Jose Luis-Aguiero

Ramirez and Elvis Cabrera Gonzales.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that White and Ramirez became acquainted when Ramirez bought a car from the used car lot where White worked. The night of the crimes, White arranged prostitution services for Ramirez, his brother, Rodrigo Salvatore Ramirez ("Rodrigo"), and their uncle, Francisco Ramirez ("Francisco"). The three men went to a motel with White, his cousin, Regina Crawford, and her friend, Tiffany Smith, who was also known as Jordan ("Jordan"). Ramirez and White went into the motel office, and Ramirez paid for two rooms with cash that he produced from his right front pants pocket; he had approximately $3,500 on his person at the time, and White watched him as he paid for the rooms. Crawford and Francisco engaged in sexual activity in one room, and Rodrigo and Jordan engaged in sexual activity in the other room. A dispute arose, and Rodrigo drove away from the motel in his own vehicle; Ramirez and Francisco then drove away in Ramirez's car, leaving White and the two women at the motel.

After Ramirez, Francisco, and Rodrigo returned to their apartment complex, Ramirez and Gonzales, his neighbor, drove back to the motel in Ramirez's car to give White and the women a ride. The five persons got into Ramirez's car, which was a two-door model; Ramirez drove and White was in the back seat. The car stopped at a grocery store parking lot, and those in the front seat exited to allow the persons in the back seat to exit. Immediately after exiting, White shot Ramirez with a pistol, and then shot Gonzales. The two women ran. Jordan entered a nearby restaurant. As Crawford was running, White drove alongside her in Ramirez's car and convinced her to get

---

[1] The crimes occurred on June 15, 2005. On October 23, 2005, a DeKalb County grand jury indicted White for: Count 1 - the malice murder of Ramirez; Count 2 - the malice murder of Gonzales; Count 3 - the felony murder of Ramirez while in the commission of armed robbery; Count 4 - the felony murder of Gonzales while in the commission of armed robbery; Count 5 - the felony murder of Ramirez while in the commission of aggravated assault; Count 6 - the felony murder of Gonzales while in the commission of aggravated assault; Count 7 - the armed robbery of Ramirez; Count 8 - the aggravated assault of Ramirez; Count 9 - the aggravated assault of Gonzales; and Count 10 - possession of a firearm during the commission of the other felonies alleged in Counts 1-9. He was tried before a jury February 12-16, 2007, but the jury did not reach verdicts. He was again tried before a jury May 7-10, 2007, and found guilty of all charges. On May 10, 2007, the trial court sentenced White to life in prison for Count 1, a consecutive term of life in prison for Count 2, ten years in prison for Count 7, to be served concurrently with Count 1, and five years in prison for Count 10, to be served consecutively to Counts 1 and 2. The remaining guilty verdicts were vacated by operation of law or merged with crimes for which sentences were given. *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). White moved for a new trial on June 8, 2007, and amended the motion on September 10, 2010; the motion was denied on September 20, 2010. White filed a notice of appeal on October 15, 2010, his appeal was docketed in the January 2011 term of this Court, and submitted for decision on the briefs.

in; he told her she was his cousin, and he would not do anything to her. He took her to a hotel near her place of work, let her out, and said he was "gone."

The bodies of Ramirez and Gonzales were found in the parking lot. Ramirez had been shot once in the back of the head; Gonzales had been shot once in the face. The right front pocket of Ramirez's pants had been pulled out. Approximately 14 hours after the shootings, White was seen in Mississippi, driving Ramirez's car; the location where the car was seen is a six-hour drive from the scene of the shootings.

1. The evidence was sufficient to enable a rational trier of fact to find White guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. White contends that the trial court erred in instructing the jury on the law regarding being a party to a crime because he was indicted alone and no other person was alleged to be a perpetrator. "However, '(t)he law is well-settled in Georgia that the State is not required to specify in the indictment that it is charging the defendant as a party to the crime.' [Cit.]" *Jennings v. State*, 288 Ga. 120, 121 (2) (702 SE2d 151) (2010). Moreover, beginning with his opening statement to the jury, White suggested that it was, in fact, Jordan who had shot the victims, rather than White; the evidence was uncontroverted that White arranged Jordan's interaction with the victims, and the evidence authorized the court to instruct the jury on the law regarding party to a crime. See *Metz v. State*, 284 Ga. 614, 618 (3) (669 SE2d 121) (2008).

3. White claims that his trial counsel failed to provide effective representation. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, White must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783.

(a) Francisco testified through an interpreter; he said that he did not understand English well. He also testified that when he was in

Ramirez's car, being driven away from the motel, Ramirez "said that he had been threatened. He said that if we did not give them a ride that they were going to do something to the car or to him." White contends that trial counsel should have objected on hearsay grounds.[2] But, such evidence is admissible under the necessity exception to the hearsay rule, subject to the trial court's discretion. See *Evans v. State*, 288 Ga. 571, 572-573 (2) (707 SE2d 353) (2011). Accordingly, as White "cannot establish that the trial court's admission of the [testimony] would have constituted an abuse of discretion had trial counsel voiced an objection, we see no merit in this allegation of ineffective assistance of counsel. [Cit.]" *Castillo v. State*, 281 Ga. 579, 584-585 (7) (642 SE2d 8) (2007).

(b) Francisco also testified that during the same drive from the motel, "[Ramirez] told me that [White] had threatened me." White contends that counsel should have impeached Francisco with his testimony from a pre-trial hearing during which Francisco testified that "it was the girls who was making the threats, not [White]." However, the context of Francisco's pre-trial hearing testimony makes it clear that he was testifying regarding the behavior of the women that he observed as he approached the car to leave the motel, not about what Ramirez recounted to him on the drive from the motel.[3] Also, Francisco's testimony in White's first trial does not demonstrate that Ramirez related to him that only one, or both, of the women had made threats. In that trial, after Francisco testified that, while in the car, Ramirez said "they" made threats, on cross-examination, White asked Francisco if Ramirez told him "specifically that Jordan made threats," and Francisco replied: "I do not know. He spoke in plural." Accordingly, White fails to establish that there is any reasonable probability that, had he pursued the line of questioning that he now advocates, the outcome of his trial would have been different. *Sheppard v. State*, 284 Ga. 775, 777-778 (2) (671 SE2d 830) (2009).

(c) Finally, White contends that trial counsel should have objected to the State's closing argument. In closing argument, the prosecutor said:

> And Rodrigo told you, and defense counsel skipped over this, that all of the testimony by Francisco, who is

---

[2] On cross-examination, counsel elicited testimony that, as Francisco approached the car to leave, although he did not understand what was being said, Jordan was speaking and gesturing angrily, while White attempted to calm her; he did not see any sort of threatening behavior on White's part.

[3] White did not cause Francisco to testify at the hearing on the motion for new trial so as to demonstrate what further testimony impeachment would have produced.

[Ramirez's] uncle, and Rodrigo, [Ramirez's] little brother, was that, they threatened us, they threatened us. They were threatening us. Not Jordan, Jordan, Jordan, Jordan, Jordan.[4]

White argues that by failing to object, counsel allowed the State to improperly refer to hearsay statements in its argument. But, again, White has failed to show that the testimony upon which the State based this portion of its argument was inadmissible, see Division 3 (a), supra, and it was thus not ineffective assistance for counsel to fail to object.[5] *Nash v. State*, 285 Ga. 753, 755 (2) (b) (683 SE2d 591) (2009).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 8, 2011.

*Sheueli C. Wang*, for appellant.
*Robert D. James, Jr., District Attorney, Leonora Grant, Daniel J. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[4] In his opening statement, counsel for White had said that "threats and arguments [were] all from Jordan . . . not from Mr. White."

[5] In this Court, White also asserts that the State misstated the evidence, contending that Rodrigo did not testify that "they threatened us." Rodrigo testified that "my brother . . . said he had been threatened that if he didn't [return to the motel] that they would remember him." To the extent that the State's argument misstated that Rodrigo testified that "they threatened *us*," we conclude that there is no reasonable probability that the outcome of the trial would have been different had counsel objected. *Long v. State*, 287 Ga. 886, 891 (4) (700 SE2d 399) (2010).