In the Supreme Court of Georgia

Decided:   November 3, 2014

S14A1179. DAVIS v. THE STATE.

BLACKWELL, Justice.

Tremain Stuart Davis was tried by a Gwinnett County jury and convicted of murder and an aggravated assault. Davis appeals, contending that he is entitled to a new trial at which he can present evidence that his alleged accomplice — who was tried separately and after Davis — was acquitted of the murder. Davis also claims that he was denied the effective assistance of counsel when his lawyer failed to insist upon a more specific answer to a jury question. Upon our review of the record and briefs, we find no merit in these contentions, and we affirm.[1]

_____

[1] The crimes were committed on June 4, 2010. Davis and co-defendant Armand Babbitt were indicted on September 9, 2010, and each was charged with two counts of felony murder, two counts of aggravated assault, and one count of armed robbery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Davis was tried alone, beginning on September 24, 2012. The jury returned its verdict on October 5, 2012, finding Davis guilty on one count of felony murder and both counts of aggravated assault, and finding him not guilty on the other count of felony murder, armed robbery, and possession of a firearm during the commission of a felony. The charge of possession of a firearm by a convicted felon was dismissed by nolle prosequi. On December

1. Viewed in the light most favorable to the verdict, the evidence shows that Felipe Brito was involved in the distribution of cocaine, and he arranged to sell some cocaine on June 4, 2010. Because Brito spoke little English, he asked Miguel Bautista to assist him as a translator. On the afternoon of June 4, Davis, Armand Babbitt, and a man known as "Omar" arrived in a Dodge Charger at the apartment complex in which Brito lived. Omar was driving, Babbitt was seated in the front as a passenger, and Davis was seated in the back. When they arrived at the complex, Brito exited his apartment and joined the three men in the Charger, sitting in the back with Davis. Brito then called for Bautista to bring a package to the car. Bautista did so, and after he handed the package through the window of the car, Brito and Davis told Bautista to join them in the car. When Bautista entered the car, however, Davis pushed Bautista and took a handgun from him. At that point, Davis, Babbitt, and Omar all displayed handguns, and they began to threaten Bautista and Brito. Bautista panicked,

5, 2012, Davis was sentenced to imprisonment for life for the felony murder and a concurrent term of imprisonment for twenty years for aggravated assault (Davis was sentenced on only one count of aggravated assault, and the other count merged with the felony murder). Davis timely filed a motion for new trial on December 12, 2012, he amended it on March 27, 2013, and he amended it again on January 21, 2014. The trial court denied his motion on January 27, 2014, and Davis timely filed a notice of appeal on February 14, 2014. The case was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

pushed Brito from the car, and exited the car himself. Davis and one of the men in the front seat of the Charger then began to fire their guns. When Brito's brother emerged with his own gun from the apartment and returned fire at the Charger, Davis, Babbitt, and Omar drove away. In the course of the shooting, Brito sustained three gunshot wounds, at least one of which was fatal. Bautista sustained a single gunshot wound, but he survived. Davis was wounded as well.

At his trial, Davis testified and admitted his presence at the scene and his involvement in the drug deal. Davis claimed, however, that he left the Charger (to relieve himself behind the apartment) before the gunfire began, that he was shot as he ran back to the Charger, and that he never had a gun on the day of the shootings. Davis also said that he did not know that Babbitt and Omar were armed.

Davis does not dispute that the evidence is sufficient to sustain his convictions, but consistent with our usual practice in murder cases, we have independently reviewed the record to assess the legal sufficiency of the evidence. As we have explained on many occasions, "we must view the evidence in the light most favorable to the verdict and leave questions of credibility and the resolution of conflicts in the evidence to the jury." Bradley

v. State, 292 Ga. 607, 609 (1) (a) (740 SE2d 100) (2013). So viewed, we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Davis was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Davis and Babbitt were indicted together for the murder of Brito, but they were tried separately. After Davis was convicted, Babbitt was tried by another Gwinnett County jury and acquitted of the murder. Citing White v. State, 257 Ga. 236 (356 SE2d 875) (1987), Davis contends that he is entitled to a new trial at which he can present evidence of Babbitt's acquittal. We disagree.

In White, this Court held that one charged distinctly as an accessory to a crime may be entitled under Georgia law to present evidence of the acquittal of another charged distinctly as the principal.[2] 257 Ga. at 236. The Court reasoned that such evidence is relevant in the trial of the accessory because

> proof of the guilt of the principal is a necessary element in the crime
> of one who does not directly commit the crime but is charged as an
> aider, abettor, encourager or counselor in the commission of the

---

[2] In White, the defendant was charged distinctly with "aiding, abetting, encouraging and counseling the commission of the crime" by another. 257 Ga. at 236.

crime. The acquittal of the principal is some evidence [that the accessory] did not aid [or] abet [the crime of which the principal was acquitted].

Id. Even assuming that White was correctly decided, it is distinguishable from this case.[3]

Unlike White, it was not essential in the case against Davis for the State to prove that Babbitt also was guilty. In the indictment, Davis was not charged distinctly as having aided or abetted Babbitt in the commission of the murder. To the contrary, Davis (like Babbitt) simply was charged with murder, and that charge permitted the State to make out its case against Davis with proof beyond a reasonable doubt that he was a party to that crime in any way, see Brinson v. State, 261 Ga. 884, 884 (1) (413 SE2d 443) (1992); see also Butler v. State, 273

---

[3] Noting that the great weight of authority would exclude the acquittal of the principal at the trial of an accessory, Justice Hunt — joined by Justice Weltner — dissented in White. See 257 Ga. at 237 (Hunt, J., dissenting) (collecting cases). The position that Justice Hunt staked out in his dissent appears to accurately reflect the general rule in American law. See 23 CJS Criminal Law § 1336 ("Evidence of acquittal of one jointly indicted with the accused is not admissible on behalf of the accused as tending to establish that he or she is also innocent.") (citation omitted). See also State v. Weaver, 873 S2d 909, 915-916 (La. App. 2004); State v. Scott, 619 NW2d 371, 374-375 (III) (Iowa 2000); Commonwealth v. Howard, 706 NE2d 303, 306 (2) (Mass. App. 1999); Miller v. State, 650 S2d 940, 945-946 (VI) (Ala. Crim. App. 1993), rev'd on other grounds, Ex parte Miller, 650 S2d 947 (Ala. 1994). Nevertheless, because White is distinguishable, we have no occasion in this case to reconsider its holding.

Ga. 380, 384 (9) (541 SE2d 653) (2001),[4] whether as the principal, an accessory to Babbitt, or an accessory to another not even named in the indictment (such as Omar). See generally OCGA § 16-2-20 (identifying the several ways in which one may be a party to a crime).[5] The evidence presented at the trial of Davis was legally sufficient to prove his guilt as a party to the crime in any of these ways, and so, the case against Davis for murder did not depend necessarily upon proof that Babbitt committed the murder.

Davis insists that the jury must have convicted him only as an accessory, noting that he was acquitted of the unlawful possession of a firearm during the commission of a crime, and noting as well that, in the course of its deliberations,

---

[4] It is now well-settled that the State is not required to specify in the indictment, as it did in White, 257 Ga. at 236, whether the defendant is alleged to be a principal or accessory. See White v. State, 289 Ga. 511, 513 (2) (712 SE2d 834) (2011); Jennings v. State, 288 Ga. 120, 121 (2) (702 SE2d 151 (2010).

[5] OCGA § 16-2-20 provides:
(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
(b) A person is concerned in the commission of a crime only if he:
    (1) Directly commits the crime;
    (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
    (3) Intentionally aids or abets in the commission of the crime; or
    (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

the jury asked whether Davis could be a party to the murder even if he were unarmed.[6] As for the acquittal on the firearm charge, however, it shows nothing of consequence, inasmuch as this Court will not speculate about why a jury might have acquitted a defendant of one crime and convicted him of another, even when the verdicts seem inconsistent. See Turner v. State, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008). As for the jury question, even if it shows that the jury, in fact, believed Davis was a party to the murder only as an accessory, it does not show that his guilt depended on Babbitt's. For all we know, the jury that found Davis guilty might have thought that Omar was the principal in the killing of Brito, and it might have found that Davis was an accessory to Omar. If that is, in fact, what the jury concluded, that Babbitt was factually innocent of the murder — even assuming, as this Court did in White, that Babbitt's subsequent acquittal in another trial is evidence of his factual innocence — would be inconsequential to the guilt of Davis.

---

[6] The jury asked this question:
We need clarification on the following: When the charge reads that the assault was performed with a handgun, does it mean that the defendant Tremain Stuart Davis had to be the actual person wielding the gun? In other words, could we render a guilty verdict on the assault charges for the defendant if we believe he himself was unarmed? This would correspond to the notion of parties to a crime.

By its own terms, White concerns prosecutions in which a defendant is charged *distinctly* and *exclusively* as an accessory to an *identified* principal, such that the theory of liability asserted by the State necessarily makes the factual guilt of the identified principal an essential part of the case against the accessory. That is not how Davis was charged or tried. That Babbitt was guilty of murder as a principal was not an essential element of the case against Davis, and Davis is not entitled under White to a new trial at which he can present evidence that Babbitt was acquitted of the murder. See Harrison v. State, 257 Ga. 528, 531 (3) (361 SE2d 149) (1987) (distinguishing White on similar grounds).

3. Davis also contends that his trial lawyer was ineffective because he failed to insist that the trial court fully recharge the jury on parties to a crime in response to the question about whether Davis could be convicted as a party to the murder even if he were unarmed. To prevail on a claim of ineffective assistance, Davis must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Davis must show that

8

the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Davis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Davis falls far short of carrying it.

In response to the jury question about parties to a crime, the trial court simply instructed the jury to consider as a whole all of the charges previously given, an approach to which defense counsel agreed. Later, at the hearing on the motion for new trial, defense counsel explained his reasons for not asking for a recharge. A concise, direct, and accurate answer to the question posed by the jury — that, yes, Davis *could* be convicted as a party to the crime even if he were unarmed — would amount to an improper comment on the evidence,

9

counsel concluded, and in any event would not be helpful to Davis. Similarly, a recharge only on parties to a crime would only emphasize the several ways in which Davis could be held responsible for the crimes with which he was charged, and in the experience of counsel, such a charge usually is harmful to the accused. To avoid such undue emphasis, counsel reasoned, it would be necessary to recharge the jury on several additional matters as well, including mere presence and association. And in any event, after the trial court charged the jury orally at the conclusion of the trial, the trial court had given the jury a written copy of the complete charge. For that reason, recharging the jury on parties to a crime and related matters would only involve another reading of instructions that the jury already had, and counsel saw little to be gained by such a recharge. As such, counsel thought it better for the court simply to refer the jury to the charges previously given.

"Decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." Cantu v. State, 304 Ga. App. 655, 659 (2) (b) (697 SE2d 310) (2010) (citation and punctuation omitted)

10

(failure to request recharge in response to jury question was not ineffective). Here, we cannot say that the worries of counsel were unreasonable ones, and we likewise cannot say that the strategy employed by counsel — to agree to the trial court simply referring the jury to the whole of the charges previously given — was unreasonable. Moreover, since the jury had a written copy of the jury instructions, we fail to see how Davis could have been prejudiced in this case by the failure of the trial court to read one or more of these charges again. Davis has failed to show that he was denied the effective assistance of counsel. See Lake v. State, 293 Ga. 56, 58 (4) (743 SE2d 414) (2013); Cantu, 304 Ga. App. at 659 (2) (b); Skaggs-Ferrell v. State, 287 Ga. App. 872, 878 (3) (652 SE2d 891) (2007).

Judgment affirmed. All the Justices concur.