In the Supreme Court of Georgia

Decided: March 27, 2015

S14A1840. DAUGHTRY v. THE STATE.

HUNSTEIN, Justice.

Appellant Ricardo Daughtry was convicted of malice murder and other serious crimes in connection with the shooting death of William Watson and of two crimes, possession of cocaine and obstruction of an officer, that occurred several months after the shooting of Watson. On appeal, Appellant contends that his trial counsel was constitutionally ineffective. For the reasons that follow, we affirm.[1]

---

[1] On December 4, 2007, Appellant was indicted by a Screven County grand jury for five crimes occurring on June 16, 2007 (malice murder, felony murder, two counts of aggravated assault, and possession of a firearm during the commission of a crime) and for two crimes occurring on September 11, 2007 (possession of cocaine and obstruction of an officer). Appellant's trial began on June 29, 2009, and on June 30, a jury found Appellant guilty on all counts. That same day, the trial court sentenced Appellant to life in prison on the malice murder conviction, 15 consecutive years for possession of cocaine, five consecutive years for firearm possession, and 12 concurrent months for obstructing an officer. The felony murder verdicts were vacated by operation of law, and the aggravated assault verdicts were merged for sentencing purposes. On July 2, 2009, trial counsel filed a motion for new trial on behalf of Appellant. Appellant later obtained new appellate counsel, and an amended motion for new trial was filed on December 13, 2013. On June 24, 2014, the trial

1.   Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following.

On the evening of Saturday, June 16, 2007, Appellant, Jeremy Williams, and Terry Calahan were at William Watson's apartment.  Appellant and Williams sold Calahan cocaine, and Calahan left the apartment. Watson proceeded to "cook" Appellant's cocaine in the apartment.  The batch was not cooking properly, and Appellant told Watson, "If you don't get my s... right, I'm going to f... you up."  Williams saw Appellant reach for a pistol and fled the apartment.  When he was about 40 yards from the apartment, Williams heard gunshots and saw a black male run from the apartment holding a shirt over his face.  After midnight, in the early morning hours of Sunday, June 17, Watson's next door neighbor, who was on her porch, heard three loud bangs, which she thought could have been gunshots.  She then saw a black male run from the apartment holding a shirt over his face.  He was ten feet from her.

court denied the motion for new trial, as amended.  Appellant then filed a timely notice of appeal.  The appeal was docketed to the September 2014 term of this Court and submitted for decision on the briefs.

2

Later that morning around 6:00 a.m., Appellant appeared at Williams' house, acting nervous. Appellant told Williams that he had shot Watson five times and tried to shoot him a sixth time in the head but was out of ammunition. Appellant also told Williams that "[t]he man f..... up. The man f..... up."

Tony Scott, who employed the victim as a carpenter, testified that the victim began a job for him installing an air conditioner on June 16 and that he took the victim home about 10:00 p.m. Because the job was not complete, Scott went by the victim's apartment on Sunday, June 17. He repeatedly knocked on the door but no one answered. He also repeatedly called the victim on Sunday but got no answer. Scott also attempted to contact the victim at his apartment and by phone on Monday, June 18, but could not reach him.

On Monday, June 18, 2007, Appellant and a friend, Travis Oliver, paid a mutual acquaintance, Darrick Barrett, to drive them down a road that crossed the Ogeechee River. When Barrett's car approached the river, Appellant and Oliver asked Barrett to stop on the bridge. Barrett did so, and Appellant and Oliver got out of the car. Oliver saw Appellant throw a gun, with the magazine removed, into the river.

Watson's sister testified that she and Watson either talked every day or he

would come by her house and visit her. She testified that she called him several times on June 17 because she had not heard from him, but that he did not answer. She added that she called him again on the morning of June 19, but still did not get an answer. Concerned, she went by his apartment that day to check on him. When she arrived there, the door was unlocked. She went in and discovered Watson, unresponsive, in the bathtub, and called 911. Law enforcement officers arrived on the scene and concluded that Watson had been shot and was deceased.

The medical examiner said that Watson had seven gunshot entrance wounds, three to the upper chest, one to the abdomen, one to the hip, and two to his left arm. According to the medical examiner, it was possible that the victim had been shot only five times, with the two entrance wounds to the left arm exiting the arm and entering the victim's body. The victim died from multiple gunshot wounds. Investigators found five shell casings in or near Watson's bathroom and two bullets. Agent Sapp of the Georgia Bureau of Investigation noticed a white residue all over the stove, which she believed was cocaine. There was also baking soda in the kitchen and two to three hundred devices used for smoking crack cocaine. A coffee pot had a white residue,

4

which tested positive for cocaine. Agent Sapp collected three fingerprints from a plate in Watson's kitchen, which matched Appellant's fingerprints.

Additionally, Watson's cell phone was found on his body, and Agent Purdiman of the GBI recorded the phone number of the caller on the last answered and received call on Watson's phone, which was at 12:45 a.m. on June 17. As further investigation would uncover, that phone number was Appellant's. On June 19 at 5:18 p.m, Agent Purdiman called Appellant's phone number from Watson's phone, identified himself as a GBI agent, and notified the person that answered that he was investigating Watson's murder. The person on the other end hung up. The agent was never able to reach a person at that phone number again.

About two hours after Agent Purdiman's call, Appellant and Oliver went to a Lowe's store, where Appellant bought a black light. A photograph of Appellant at the register purchasing the black light, with Oliver standing near him, was introduced into evidence, as was the receipt for the black light, which contained a time stamp of 7:12 p.m. on June 19. On their way home, Oliver and Appellant stopped at a friend's motel room, where Appellant shined the black light on his hands and asked Oliver if he could see anything. Oliver told him

that he could not.

A few days later, at Appellant's request, Barrett drove Appellant and Kurtis Sheppard to Atlanta and left Appellant there.

On July 10, 2007, a police dive team found a .380 caliber handgun with the magazine removed in the Ogeechee River. A firearms identification expert testified that the gun, on which the serial number was scratched out, fired the shell casings found in Watson's apartment. However, the markings on the spent rounds were too poor to make a match. Williams, Sheppard, and Oliver all testified that this recovered gun belonged to Appellant, with Sheppard adding that Appellant's gun had a scratched out serial number.

On July 19, 2007, Appellant agreed to be interviewed by GBI Agent Hill. Appellant admitted that he had been to Watson's apartment about a month before. He also admitted that he was riding with Barrett and Oliver when they stopped on the bridge over the Ogeechee River. He maintained, though, that he urinated and threw a 22-ounce beer bottle into the river and did not throw a gun into the river. When asked where he purchased the beer, he gave the agent the name of a store and said that he purchased several bottles. However, the store's receipts for that day listed no such purchase. Appellant denied all involvement

6

in Watson's death and told Agents he was playing dominoes and drinking beer with Williams on the night of the murder. He also denied having a cell phone, calling Watson's phone the day of the murder, having a gun, going to Lowe's, and having any involvement with drugs.

On September 11, 2007, Agent Hill and several other law enforcement officers went to Appellant's grandmother's residence, asked him to come with them, and patted him down near their patrol car. When Agent Hill pulled a bag of crack cocaine out of Appellant's pocket, Appellant grabbed the bag and a struggle ensued. There were enough officers, however, to subdue Appellant.

Phone records from the Screven County jail showed that Appellant called Shawn Jackson, a mutual friend of Williams and Appellant, five times in June 2009 before Appellant's trial. Jackson testified that, on one of those occasions, Appellant asked to speak to Williams, who was with Jackson. Williams testified that Appellant told him to testify that police scared him into making his statement implicating Appellant. Williams also testified that prior to that phone call, Appellant had told him to "take out" Sheppard, Barrett, and Oliver before trial because they knew what had occurred. At that time, Appellant told Williams that Appellant could implicate Williams as an accessory. Sheppard

7

added that Appellant asked him to tell Williams to intimidate Oliver.

The State also introduced similar transaction evidence. Wesley Roberts, an acquaintance of Appellant, testified that on May 13, 2007, he and Appellant were walking near a mobile home park in which Ricardo Raymond lived. Appellant said that he wanted to rob Raymond's home. Roberts saw Appellant walk along the tree line of the mobile home park and then cut towards Raymond's home. Roberts did not go with Appellant, but a short time later, he heard several gunshots and fled. Roberts added that the handgun found in the Ogeechee River looked like a handgun that he had seen in Appellant's possession before. Jason Taylor testified that on the night of May 13, 2007, he went to Raymond's mobile home. He found the door open and went in. Almost immediately, he heard a gunshot, began running, and then heard several more shots. Taylor did not see the shooter. Four shell casings were found in Raymond's home, and forensic evidence showed that they had been fired from the murder weapon.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was

convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009). ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant raises ten claims contending that his trial counsel provided constitutionally ineffective assistance.[2] To prevail on his ineffective assistance claim, he must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "'This burden, although not impossible to carry, is a heavy one.'" Bester v. State, 294 Ga. 195, 196 (751 SE2d 360) (2013). When assessing prejudice, a court "must consider the totality of the evidence before the judge or jury. . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 695-96. Moreover, in weighing prejudice, Appellant is

---

[2] Appellant raised all ten of these claims in his motion for new trial, which the trial court denied in a summary order.

entitled to relief if any one error of trial counsel shows that there is a reasonable probability that the outcome of the trial would have been more favorable to him or if "the collective prejudice from all of trial counsel's deficiencies" meets that standard. Perkins v. Hall, 288 Ga. 810, 812 (708 SE2d 335) (2011). Accord Toomer v. State, 292 Ga. 49 (4) (734 SE2d 333) (2012); Schofield v. Holsey, 281 Ga. 809, 811-812 & n.1 (642 SE2d 56) (2007).

(a) Appellant claims that trial counsel provided ineffective assistance in failing to seek a severance of the two crimes committed on September 11, 2007, from the crimes connected with the death of the victim. Appellant bases this argument, in part, on his assertion that he was not arrested for the murder of the victim on September 11, but was instead only asked to go to the police station for an interview and that law enforcement officers arrested him on September 11 only for the crimes that occurred that day after Agent Hill searched him and found the bag of cocaine. Appellant asserts that, because those crimes were not connected to his arrest for the crimes related to the death of the victim, trial counsel could have obtained a severance and provided deficient performance in failing to do so. Appellant also contends that, even if he had been arrested on September 11 for the homicide-related crimes, trial

10

counsel could have obtained a severance and provided ineffective assistance in failing to move for one.

We conclude, however, that Appellant has failed to prove that counsel's actions were professionally unreasonable. Agent Hill testified at trial that he and about five other law enforcement officers went to Appellant's grandmother's house on September 11 and "located [Appellant] and we arrested him there." He added that during the course of his investigation, he had certain information linking Appellant to the death of the victim but that he did not have strong evidence that Appellant was at the victim's house. He testified that when the fingerprint expert called and told him that Appellant's fingerprints were found on the black plate located near the stove, he "obtained an arrest warrant for [Appellant] and then we moved forward to arrest him." Moreover, in describing the struggle that ensued after the officers discovered the bag of cocaine in Appellant's pocket, Agent Hill described Appellant as "resisting arrest."

To argue that he was not arrested for the homicide-related crimes before he was searched on September 11, Appellant relies on an "Investigative Summary" that appears to have been prepared by Agent Hill. Appellant,

11

however, did not call Agent Hill as a witness at the motion for new trial hearing, and he thus failed to show that the summary was anything other than inadmissible hearsay.  See Waldrip v. Head, 279 Ga. 826 (II) (A) (620 SE2d 829) (2005) (holding that a "'Summary Report'" submitted to support a claim under Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), could not be relied on to support the Brady claim when the defendant did not call any witnesses about the preparation of the report and thus failed to show it was anything other than inadmissible hearsay); accord Schofield v. Cook, 284 Ga. 240 (II) (D) (663 SE2d 221) (2008) (reports by third parties about what a witness would have testified to had she been subpoenaed were inadmissible hearsay not worthy of consideration in connection with ineffectiveness claim).

Thus, the "Investigative Summary" cannot be considered in support of this claim, and, without it, the record shows only that Appellant was arrested on September 11, 2007, for the crimes relating to the death of the victim.  On this record, we conclude that trial counsel did not perform deficiently in failing to file a motion to sever.  In this regard, Appellant relies on Benford v. State, 272 Ga. 348 (3) (528 SE2d 795) (2000), to contend that trial counsel provided ineffective assistance.  There, the defendant was arrested a month and a half

12

after the homicide for which he was on trial. Id. at 350. At the time of his arrest, Benford fled from the officers and discarded a .22 caliber pistol and a can containing crack cocaine. Id. at 349. Benford contended that the trial court erred in admitting evidence of the circumstances of his arrest. We held that

> evidence which shows the commission of another crime may not automatically be admitted solely on the basis that the evidence was incident to an accused's arrest where the evidence is wholly unrelated to the charged crime, the arrest is remote in time from the charged crime, and the evidence is not otherwise shown to be relevant. . . . Just as evidence of the circumstances connected with an accused's arrest is not automatically prejudicial neither is it automatically relevant. Rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence.

Id. at 350 (citations omitted).

Benford, however, did not involve a motion to sever crimes arising from the circumstances of a defendant's arrest. In severance cases, we have generally "'upheld joinder of two crimes when one crime is a circumstance of the arrest on the other crime.'" Woolfolk v. State, 282 Ga. 139, 140 (2) (644 SE2d 828) (2007). We have said that, in these circumstances, the crime committed at the time of arrest is a related offense to the other crimes. See Roundtree v. State, 270 Ga. 504 (3) (511 SE2d 190) (1999). But we have on occasion examined the circumstances of the arrest to determine if the crimes committed then are

13

directly related and relevant to the original crimes other than for the reason that the crimes occurred at the time of arrest. See Woolfolk, 282 Ga. at 140-141 (holding that the defendant's crime at the time of his arrest of aggravated assault against a peace officer was directly related to the original crimes and distinguishing Benford, not only on the ground that Benford did not involve a motion to sever but also on the ground that the part of the holding in Benford on which the defendant relied involved a crime wholly unrelated to the original crimes). See also Williams v. State, 277 Ga. 368, 369 & n.8 (3) (589 SE2d 563) (2003) (holding that the defendant had not received ineffective assistance of counsel based on counsel's failure to move to sever a disorderly conduct charge that occurred at the time of arrest on the original homicide crime, stating that joinder of two crimes is proper "when one crime is a circumstance of the arrest on the other crime," but also citing a case which relied on Benford for the proposition that "evidence of circumstances of arrest are subject to same standards of materiality and relevancy as other evidence").

Even assuming that the principles of Benford fully apply to motions to sever, Appellant's ineffectiveness claim fails. In Benford, the defendant was arrested a month and a half after the homicide and had a can containing cocaine.

14

We held that

> given the role crack cocaine played in the events leading up to the murder of the victim and the reasonable inference the jury could have drawn from the evidence that Benford's motive in murdering the victim was to obtain the victim's drugs or money to purchase the drug from others, we find no error in the trial court's admission of testimony that Benford possessed crack cocaine when arrested.

Benford, 272 Ga. at 350. Accord Smith v. State, 276 Ga. 97 (5) (575 SE2d 450) (2003) (holding that the trial court did not err in admitting evidence that the defendant possessed marijuana when he was arrested, saying it was relevant to the murder-related charges because a dispute over marijuana led to the shooting of the victim). Similarly, here, given the role that crack cocaine played in the death of the victim, the trial court would not have been required to grant a motion to sever, and Appellant's counsel cannot be said to have performed deficiently in failing to file such a motion. See Bryant v. State, 2015 Ga. LEXIS 94 (2) (a) (Feb. 2, 2015) (holding that where the trial court has discretion to admit evidence of a threat to a witness and would not have been required to sustain an objection to such evidence, trial counsel did not provide ineffective assistance in failing to object to the testimony); Bester v. State, 294 Ga. at 198 (holding that where the trial court would have acted within its discretion in

15

denying a motion in limine to challenge similar transaction evidence, trial counsel did not perform deficiently by failing to file such a motion); Yancey v. State, 292 Ga. 812 (4) (740 SE2d 628) (2013) (explaining that counsel's failure to make a meritless objection does not amount to unreasonable performance as a matter of law and holding that where the trial court had the discretion to overrule an objection to the prosecutor's closing argument, trial counsel did not perform deficiently in failing to make the objection).

(b) Because the record shows that Appellant was properly arrested for the homicide-related crimes on September 11, Agent Hill was authorized to search Appellant pursuant to that arrest. See State v. Hargis, 294 Ga. 818, 824 (2) (756 SE2d 529) (2014) (explaining that "[i]t long has been settled that, as an incident of a lawful arrest, an officer may search the person of the arrestee"). Because the trial court would have been authorized to deny a motion to suppress the cocaine found on Appellant at the time of his arrest, trial counsel did not perform deficiently by not filing a motion to suppress that cocaine. See Bryant, 2015 Ga. LEXIS 94 at *7; Bester, 294 Ga. at 198; Yancey, 292 Ga. at 819.

(c) Appellant claims that trial counsel rendered ineffective assistance by failing to make the appropriate arguments to exclude or limit the

16

similar transaction evidence admitted at trial. We disagree.

At a motions hearing before trial, the State contended that the similar transaction evidence was admissible for the purpose of establishing identity, in that it showed that Appellant had possession of the murder weapon 34 days before the victim's death. Trial counsel argued that the similar transaction evidence should not be admitted because the State could not establish that Appellant was the one who robbed Raymond's mobile home on May 13. The trial court took the issue under advisement.

On the morning of trial, the State again argued that the similar transaction evidence was admissible to prove identity, contending it showed that the murder weapon was "his gun," as well as for his "propensity to use a gun" and summarized Robert's and Taylor's testimony. Trial counsel again objected on the ground that the State did not have sufficient proof that Appellant was the perpetrator of the May 13 offense. The trial court noted that contention, but said there was circumstantial evidence of Appellant's involvement and that it would give a limiting instruction with regard to the jury's use of the evidence. The court did not say what that instruction would be. Before the evidence was introduced, the trial court instructed the jury that the evidence was being

17

admitted for the limited purpose of showing "the state of mind, that is to say the knowledge or intent of the defendant in the crimes charged in the case now on trial." Appellant did not object to this charge. In its final charge to the jury, the trial court repeated this limiting instruction, and, again, Appellant did not object. In its closing argument, the State argued that evidence of the crime committed on May 13 was relevant to establish Appellant's identity, because it was evidence that the murder weapon belonged to him. The State did not argue that it proved intent or Appellant's propensity use a weapon.

We conclude that Appellant has failed to show that trial counsel performed deficiently in challenging the introduction of the similar transaction evidence.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. To these ends, the law recognizes a "strong

18

presumption" that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry that burden, the defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not, or put another way, that his lawyer "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

State v. Worsley, 293 Ga. 315, 323-324 (3) (745 SE2d 617) (2013) (citations omitted and paragraph structure altered).

Evaluating trial counsel's challenged conduct from his perspective at the time, he was faced with evidence of a similar transaction that was admissible at trial. See Hanes v. State, 294 Ga. 521, 522-523 (755 SE2d 151) (2014) (holding that similar transaction evidence regarding a traffic stop in which the police found a weapon in his car similar to the murder weapon was admissible to prove course of conduct); Palmer v. State, 271 Ga. 234, 240 (8) (c) (517 SE2d 502) (1999) (holding that evidence that the defendant was in possession of the murder weapon when stopped for a traffic violation several years before the homicide-related crimes "was not a similar transaction, but simply relevant evidence that [the defendant] possessed the murder weapon"). Given the general admissibility of the similar transaction evidence in question and given the fact that no witness saw Appellant in or around Raymond's mobile home on May 13, we cannot

19

conclude that trial counsel's tactical decision on how to challenge this evidence was "'so patently unreasonable that no competent attorney would have chosen [it].'" Davis v. State, 296 Ga. 126, 131 (3) (765 SE2d 336) (2014). Accordingly, Appellant has failed to show that his trial counsel performed deficiently with respect to this claim of ineffective assistance.

(d) Appellant contends that trial counsel provided ineffective assistance by failing to call Taquisha Cheevers to testify at trial.

At the motion for new trial hearing, Cheevers, who was an acquaintance of the victim, testified that about 4:15 p.m. on June 19, 2007, she was interviewed by the GBI and told them that she had seen the victim at a local Dollar General store on June 18. However, given the consistency of numerous witnesses concerning the dates involved, given the evidence that the last call to the victim's cell phone was placed at 12:45 a.m. on June 17, and given that Cheevers had no information about the homicide itself, we cannot conclude that, if trial counsel had called Cheevers as a witness at trial, there is reasonable probability that the outcome of the trial would have been different.

(e) Appellant next contends that trial counsel furnished ineffective assistance by failing to object to the hearsay testimony of Agent Hill as to

20

Appellant's phone number. However, several other witnesses had already testified as to Appellant's phone number, and we cannot conclude that trial counsel's decision not to object to evidence that was already before the jury from several sources was "'so patently unreasonable that no competent attorney would have chosen [it].'" Davis, 296 Ga. at 131.

(f) Appellant claims that, because there was evidence that Travis Oliver had a prior conviction, trial counsel provided ineffective assistance in not objecting to the trial court's failure to charge the jury on impeachment of a witness by a prior conviction. Here, however, Oliver appeared in court in a prison jumpsuit, admitted that he was in prison for a probation violation on an aggravated assault conviction, and admitted that he sold cocaine. Because of these facts and the overwhelming evidence of Appellant's guilt, we conclude that, even if counsel had objected to the court's failure to charge on impeachment by a prior conviction, there is not a reasonable probability that the outcome of the trial would have been different.

(g) Appellant contends that trial counsel erred by failing to object to the trial court's charge to the jury that it could consider an eyewitness's level of certainty in determining identity, a charge which, Appellant correctly notes,

21

this Court disapproved in <u>Brodes v. State</u>, 279 Ga. 435, 442 (614 SE2d 766) (2005). Even if trial counsel performed deficiently in not objecting to this charge, Appellant does not even argue how that error was prejudicial, and we conclude that, because the only eyewitnesses were acquaintances of Appellant and because of the overwhelming evidence of Appellant's guilt, there is not a reasonable probability that, if the trial court had omitted the charge at Appellant's behest, the outcome of the trial would have been more favorable to him. See <u>Gadson v. State</u>, 289 Ga. 117, 119 (2) (707 SE2d 868) (2011) (holding that "'[a]ny error in the giving of an eyewitness 'level of certainty' instruction was harmless inasmuch as the eyewitness [was] acquainted with [appellant] before he shot and killed the victim'").

(h) Appellant contends that trial counsel provided ineffective assistance by failing to object to the trial court's charge on "admission by conduct." In particular, the court charged the jury that it could infer a consciousness of guilt if it believed that Appellant had attempted to threaten or intimidate a witness. Appellant properly does not contend that evidence of attempts to threaten or intimidate a witness is inadmissible, see, e.g., <u>Lindsey v. State</u>, 295 Ga. 343, 348 (3) (760 SE2d 170) (2014) ("[e]vidence of a defendant's

22

attempt to influence or intimidate a witness is circumstantial evidence of guilt"), but contends that a charge instructing the jury on how to consider the evidence should not be given. Appellant does not point to any case holding that this charge is incorrect, and it appears that neither this Court nor the Court of Appeals has held that such a charge is error. In fact, the Court of Appeals has approved of the charge. See Williams v. State, 171 Ga. App. 934 (3) (321 SE2d 429) (1984).[3]

Unable to find any case law specifically prohibiting the charge, he argues that trial counsel should have argued that the charge should not be given based on the rationale of Renner v. State, 260 Ga. 515 (3) (b) (397 SE2d 683) (1990), in which we disapproved of charging the jury on flight in criminal cases. Before Renner, the flight charge instructed the jury that it could infer a consciousness of guilt from evidence of flight. See Boutwell v. State, 256 Ga. 63 (3) (344

---

[3] This charge is approved in some Federal courts. See, e.g., United States v. Reaves, 649 F3d 862, 867 (8th Cir. 2011) (approving charge that informs the jury that it may consider whether "[a]ttempts by a defendant to influence a witness in connection with the crime charged in this case . . . show[] a consciousness of guilt").

SE2d 222) (1986). In disapproving of the flight charge in <u>Renner</u>, we said that

> [t]he charge serves no real purpose, as it is a particularization of the general charge on circumstantial evidence, and as the state is free to use circumstantial evidence of flight to argue the defendant's guilt. . . . Moreover, the charge inevitably carries with it the potential of being interpreted by the jury as an intimation of opinion by the court that there is evidence of flight and that the circumstances of flight imply the guilt of the defendant; this is especially true since the trial court does not give specific charges on other circumstances from which guilt or innocence may be inferred.

Id. at 518.

However, "[i]n making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law, and . . . only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law." <u>Perera v. State</u>, 295 Ga. 880, 885-886 (3) (d) (763 SE2d 687) (2014) (citation and punctuation omitted). We, however, need not decide if trial counsel should have argued against the charge based on <u>Renner</u>, because, again, Appellant has failed to show prejudice. Two acquaintances of Appellant implicated him in the scheme to intimidate witnesses; evidence of this attempted intimidation was properly admitted at trial; the State properly argued that the jury could infer guilt from

24

the evidence; and the evidence of Appellant's guilt is overwhelming. Under these circumstances, we cannot conclude that, if the trial court had not given the jury charge in question, there is reasonable probability that the outcome of the trial would have been different.

(i) Appellant contends that trial counsel rendered ineffective assistance by failing to investigate Sheppard's criminal history and impeach him at trial with a pending felony charge.[4] At the motion for new trial hearing, trial counsel testified that he did not "recall this issue one way or another." However, even if trial counsel performed deficiently by not discovering Sheppard's pending charge, Sheppard admitted on cross-examination to smoking marijuana and crack cocaine, and he did not testify to any critical information that was not also testified to by other witnesses. Based on these considerations and the overwhelming evidence of Appellant's guilt, we conclude that Appellant has failed to carry his burden to show prejudice from counsel's error.

---

[4] At the motion for new trial hearing, Appellant introduced certified copies of an October 2007 indictment against Sheppard for aggravated assault and making terroristic threats.

25

(j) Appellant contends that trial counsel provided deficient performance by failing to impeach Oliver and Williams with prior inconsistent statements. At the motion for new trial hearing, however, Appellant relied on hearsay summaries as to the content of those allegedly inconsistent statements. Absent any admissible evidence to support this ineffectiveness claim, we must reject it. See Waldrip, 279 Ga. at 828; Cook, 284 Ga. at 251.

Appellant, however, does raise one allegation of ineffective assistance regarding trial counsel's cross-examination of Williams that does not relate to a prior inconsistent statement. On direct, Williams testified that Appellant asked him to "take out" Barrett, Sheppard, and Oliver. Appellant contends that trial counsel erred by failing to ask Williams why Appellant would threaten those three witnesses and not Williams, when Williams was the most damaging witness against Appellant.

"'The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel.'" Walker v. State, 294 Ga. 752, 756 (2) (a) (755 SE2d 790) (2014). Here, trial counsel more than adequately cross-examined Williams, getting him to admit, among other things, that when he was questioned shortly after the crimes, he told the police that he

26

was with Appellant drinking beer and playing dominoes and that he changed his story some two years later when a police officer told him that, if he did not testify against Appellant, the police would look at him as a possible suspect. That trial counsel did not ask the specific question that Appellant says he should have does not constitute deficient performance.

(k) We have assumed for the sake of analysis that trial counsel performed deficiently in several ways. However, considering "the totality of the evidence before the . . . jury" and considering that the verdict has "overwhelming record support," Strickland, 466 U.S. at 695-96, we cannot conclude that, considering the cumulative effect of counsel's alleged errors, there is a reasonable probability that the outcome of the trial would have been different.

Judgment affirmed. All the Justices concur.

27