NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 17, 2026

S26A0051.  BADIE V. THE STATE.

BETHEL, Justice.

Maurice Badie appeals his conviction for the murder of Christopher Ramsay and other crimes, all committed in connection with a public gunfight.[1] On appeal, Badie argues that the evidence

---

[1] The shooting occurred in the late hours of July 17, 2008. On October 28, 2008, a Fulton County grand jury jointly indicted Badie and Domonique Hodo for malice murder (Count 1), felony murder (Counts 2–3), aggravated assault (Counts 4–8), aggravated battery (Count 9), possession of a firearm during the commission of a felony (Count 10), and one count each of possession of a firearm by a convicted felon (Counts 11 and 12). The grand jury also indicted Matthew Benton on Counts 1–2 and 4–10.

The State dismissed Hodo's charges before trial. Badie and Benton were tried jointly from June 14 to 21, 2010. The jury found both defendants guilty on all counts. The trial court sentenced Badie to serve life in prison for Count 1, a consecutive 20 years in prison on Count 5, a concurrent 20 years in prison on Counts 6, 7, and 9, and a consecutive 5 years in prison on Count 10. The remaining counts merged or were vacated by operation of law. The trial court sentenced Benton similarly. We previously reversed Benton's convictions in *Benton v. State*, 302 Ga. 570, 570 & n.1 (2017) (reversing murder conviction based on custodial interview of defendant who did not understand *Miranda* rights).

Badie timely moved for a new trial and amended the motion twice, in

was constitutionally insufficient to support his conviction; that he is entitled to a new trial so that he can present evidence of a co-defendant's successful appeal and subsequent guilty plea; that admission of said co-defendant's statements violated Badie's Confrontation Clause rights; that he received ineffective assistance of counsel in two respects; and that the trial court should have granted Badie a new trial on the general grounds. Each claim fails, so we affirm.

1. Viewed in the light most favorable to the verdicts, the trial evidence showed the following. Sometime on July 17, 2008, Ramsay approached R.B., the younger brother of co-defendant Matthew

---

2019 and in 2024, the latter through new counsel. The trial court held a hearing on Badie's motion and entered an order denying the motion on January 24, 2025. Badie filed a timely notice of appeal, and the case was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

We note the long delay in resolving Badie's appeal. The trial court apparently had not ruled on Badie's first new trial motion, filed in 2010, when Badie amended that motion in 2019. And after Badie amended his new trial motion in 2019, he did not file a second amended motion until 2024. So we "reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Owens v. State*, 303 Ga. 254, 258 (2018) (quotation marks omitted).

Benton, and asked to buy R.B.'s four-wheeler. R.B. declined, and Ramsay responded by putting a gun in R.B.'s mouth. R.B. reported the incident to Benton's friends.

Later in the day, a group of men approached Ramsay. One said, "You can draw a gun on a kid, how about [you] try to draw one on a man[?]" Someone also said, "12:00 o'clock … we going to see how much of a man … are you." Later that night, shortly before midnight, Ramsay and a group of friends were barbecuing outside a friend's apartment. Multiple gunmen emerged from several directions and fired dozens of shots at Ramsay's group. Ramsay was fatally shot in the head; four others were injured. The shooters then fled the scene.

Multiple witnesses saw Badie near the scene before and during the shooting. One saw him firing a gun toward the victims. Another saw Badie seconds before the shooting, standing near the scene with Benton and others. Badie was openly carrying a handgun and hid behind a nearby truck upon making eye contact with that eyewitness. And about 10 or 20 minutes before the shooting, a victim saw Benton and Badie on a hill from which shots were later fired.

3

2. (a) Badie seems to suggest the evidence was constitutionally insufficient to sustain his murder conviction. As best we can tell, Badie believes that, because Benton subsequently pleaded guilty to voluntary manslaughter, no rational trier of fact could find Badie guilty as a party to the crime of Ramsay's murder. Badie's claim fails.

"Evidence is constitutionally sufficient to sustain a conviction if, when viewed in the light most favorable to the verdicts, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the charged crime." *Owens v. State*, ___ Ga. ___ (2026), S25A1229, slip op. at 8 (Ga. Feb. 17, 2026) (2026 WL 436319) (quotation marks omitted). Conviction as a party to the crime requires proof of "a common criminal intent, which the jury may infer from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes." *Sims v. State*, 321 Ga. 627, 629 (2025) (quotation marks omitted). And we have repeatedly held that "participating in a gunfight in a crowded area is enough to support a conviction for malice murder as a party

4

to the crime." Id. at 630–31.

Here, three eyewitnesses placed Badie at the scene of Ramsay's murder. Two of those witnesses saw him with a gun. One witness saw him fire that gun in Ramsay's direction. The other witness saw Badie hide behind a truck upon being spotted with the gun. And Ramsay unquestionably died from a gunshot wound to the head. Evidence that Badie "armed himself and subsequently discharged his weapon during" the attack on Ramsay authorized a rational jury to infer that Badie shared a common criminal intent with the other shooters to engage in a gunfight, which killed one man and injured four others. See id. (collecting similar cases). See also *Williams v. State*, 313 Ga. 325, 327–28 (2022) (evidence of participation in fatal shootout authorized conviction as party to the crime of malice murder); *Blackwell v. State*, 302 Ga. 820, 821–22 (2018) (same). That is enough for a rational trier of fact to find Badie guilty beyond a reasonable doubt as party to the crime of murder.

Neither reversal of Benton's conviction nor his subsequent plea to voluntary manslaughter undermines that conclusion. The

constitutional sufficiency analysis considers "all the evidence presented *at trial.*" *Copeland v. State*, 314 Ga. 44, 47 (2022) (emphasis added, quotation marks omitted). Evidence not presented at trial, much less post-trial procedural developments in a co-defendant's case, is irrelevant to that analysis. So our reversing Benton's conviction and Benton's subsequent guilty plea to a lesser offense has no bearing on whether a rational jury could have found Badie guilty beyond a reasonable doubt of murder.

Further, while we reversed Benton's conviction because his custodial statements were inadmissible under *Miranda*, we affirmatively held that the evidence was otherwise constitutionally sufficient to sustain his conviction for malice murder. *Benton*, 302 Ga. at 572. And where only one witness testified that Benton participated in the shooting, id. at 575 n.8, three witnesses testified to Badie's presence or participation. Thus, neither our ruling in *Benton* nor any subsequent developments cast doubt on the constitutional sufficiency of Badie's convictions.

(b) As best we can tell, Badie also appears to assert that he is

6

entitled to a new trial to present evidence that, following reversal of Benton's convictions, Benton pleaded guilty to the lesser offense of voluntary manslaughter. Badie predicates this argument on our decision in *White v. State*, where we held that a person charged distinctly as an accessory to a crime may be entitled to present evidence that the person charged distinctly as the principal was acquitted of that same crime. 257 Ga. 236, 236 (1987). Badie reads *White* to mean that, without evidence of Benton's subsequent guilty plea, Badie could not have received a fair trial and that he must be retried so that a jury can hear that evidence.

Badie is mistaken. The defendant in *White* was "charged *distinctly* and *exclusively* as an accessory to an *identified* principal," from which we concluded that the "theory of liability asserted by the State necessarily [made] the factual guilt of the identified principal an essential part of the case against the accessory." *Davis v. State*, 296 Ga. 126, 129 (2014) (emphasis in original). But for a defendant "simply … charged with murder," we said, the State may "make out its case against [the defendant] with proof beyond a reasonable

7

doubt that he was a party to that crime in any way," whether as a principal, an accessory to a co-defendant, or an accessory to an unindicted third party. *Davis*, 296 Ga. at 128. See also OCGA § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto, although the person claimed to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, or is not amenable to justice or has been acquitted."). Even under the theory articulated in *White*, the guilt of a co-defendant "simply … charged with murder" is not an element of another co-defendant's conviction: acquittal of one does not entitle the other to a retrial. See *Davis*, 296 Ga. at 128–29; OCGA § 16-2-21.

Here, Badie "simply was charged with murder." See *Davis*, 296 Ga. at 128. So even assuming *White* were correctly decided,[2] Badie's

---

[2] We do not suggest that *White* was correct, see *Davis*, 296 Ga. at 128 & n.3, nor do we read *Davis* to conclude that a defendant "charged distinctly as

8

argument fails on its own terms—the State plainly did not have to prove that Benton was guilty of murder as a principal in order to prove that Badie was guilty as a party to the crime. See OCGA § 16-2-21. See also *Davis*, 296 Ga. at 128–29. Benton's post-trial guilty plea to the lesser offense of voluntary manslaughter was thus "inconsequential" to Badie's guilt, he "is not entitled under *White* to a new trial," and this argument fails. Id at 129.

3. Badie next advances two related Confrontation Clause claims regarding an out-of-court statement by co-defendant Benton. At trial, the State introduced evidence of Benton's custodial interview. During that interview, Benton admitted to shooting at Ramsay (in response to the four-wheeler incident) on two separate occasions shortly before the fatal shooting; he denied involvement in the shooting that killed Ramsay. The trial court did not instruct the

---

an accessory" would be entitled to a new trial following a guilty verdict in order to introduce evidence of the acquittal of another defendant "charged distinctly as a principal," id. at 127–28. As relevant here, *Davis* held only that *White*—whether correct or not—did not apply to a defendant who "simply was charged with murder" rather than charged only as aiding and abetting another. Id. at 128. The same is true here, so we need not definitively evaluate *White* and *Davis*.

jury to consider the statement only against Benton, and Badie did not request such an instruction.

Badie argues that the admission of co-defendant Benton's custodial statements at their joint trial violated Badie's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution pursuant to *Bruton v. United States*, 391 US 123 (1968). Badie also argues that, even if his *Bruton* rights were not violated, admitting Benton's statement without instructing the jury to consider it only against Benton violated Badie's Confrontation Clause rights.

Because Badie did not raise either issue at trial, we review them for plain error only. See *Henderson*, 317 Ga. 66, 77 n.3, 78 (2023); OCGA § 17-8-58. To prevail on this claim, then, Badie "must show that the trial court made a legal error that was not affirmatively waived, was clear and obvious, likely affected the outcome of the trial, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Owens*, 2026 WL 436319, at *3 (quotation marks omitted). And if Badie fails to show any

prong, we need not consider the others. See *James v. State*, 321 Ga. 812, 818 (2025).

(a) When defendants are tried jointly, admission of one co-defendant's out-of-court statement can be "powerfully incriminating against the [other] defendant[.]" *Henderson*, 317 Ga. at 76. And "[t]he co-defendant whose statement is introduced has, and often will assert, the right under the Fifth Amendment's Self-Incrimination Clause not to testify." Id. at 75. So, the defendant "who is implicated by the statement [is] unable to cross-examine the witness who would testify against him—a clear-cut violation of the defendant's rights under the Confrontation Clause." Id. "The longstanding 'solution' to this Fifth Amendment-Sixth Amendment conflict is a limiting instruction" that the jury consider the statement only against the co-defendant. Id. But at a joint trial, a "powerfully incriminating" statement creates too great a risk that the jury would not follow an instruction to consider the statement only against the co-defendant who made it. Id. at 76. So, under *Bruton*, it must be excluded. Id. But only when a non-testifying co-

11

defendant's statement incriminates the defendant "on its face" is that statement "powerfully incriminating" and thus subject to *Bruton*'s narrow exclusionary rule. Id. at 76–77 (quotation marks omitted). *Bruton* does not apply to statements that become incriminating only when "linked with evidence introduced later at trial." Id. at 76. But even if a non-testifying co-defendant's statement falls outside the *Bruton* rule, admission can still violate the Confrontation Clause if the jury is not instructed to consider the statement only against the non-testifying co-defendant. See id. at 78–79.

(b) Badie argues that admitting Benton's statement violated his Confrontation Clause rights under *Bruton*. But he concedes in his appellate brief that Benton "did not explicitly name Badie in his statement." See *Henderson*, 317 Ga. at 77 ("We have consistently held that *Bruton* excludes only a statement of a non-testifying co-defendant that, standing alone, 'directly inculpates' the defendant[.]").The record confirms his concession: Benton simply disclaimed responsibility for the killing and admitted to shooting at

12

Ramsay twice shortly before the crimes. That does not inculpate Badie "on its face." Id. at 76. Nor does it inculpate Badie by naming an anonymous third party under circumstances obviously suggesting Badie's guilt. Cf. *Gray v. Maryland*, 532 US 185, 188–89, 193–95 (1998) (*Bruton* applies to statement redacting co-defendant's name when presented under circumstances "point[ing] directly" to the defendant, as when a statement redacts the co-defendant's name but is followed by officer's testimony that the statement led immediately to that co-defendant's arrest). Indeed, Benton's statement did not even mention an unnamed third party that the jury *could have* inferred was Badie. In short, "nothing in the statement itself" implicated Badie, see *Henderson*, 317 Ga. at 78, and that is not enough to trigger *Bruton*'s protection, see *Samia v. United States*, 599 US 635, 648–53 (2023) (distinguishing statements that name a co-defendant or simply replace that name with a conspicuous blank space from statements that implicate the co-defendant only indirectly). See also *Simpkins v. State*, 303 Ga. 752, 755–56 (2018) (no *Bruton* violation when co-defendant's

13

statement did not implicate the appellant directly and left open the possibility of multiple other shooters besides appellant). This claim fails because Badie has not shown clear and obvious legal error.

(c) Badie next argues that, even if the admission of Benton's statement did not violate *Bruton*, admitting the statement without a limiting instruction telling the jury to consider that statement only against Benton nevertheless violated Badie's Confrontation Clause rights.

Badie has identified a clear and obvious error that was not affirmatively waived: the trial court should have instructed the jury to consider Benton's statement only against Benton. See *Henderson*, 317 Ga. at 78. But Badie has not satisfied the plain-error harm prong—that the absence of a limiting instruction likely affected the outcome of his trial. See *Owens*, 2026 WL 436319, at *3 (to establish plain error, appellant must show, among other things, harm by demonstrating that clear and obvious legal error likely affected the outcome of the trial). Without Benton's statement—which the State barely mentioned in closing argument, and never in connection with

14

Badie—the evidence against Badie was quite strong: three eyewitnesses placed him at the scene shortly before the shooting, two of whom saw him with a gun and one of whom saw him fire that gun at the victims. Considering that strong evidence, Benton's statement likely carried little (if any) weight—especially when the statement inculpated Benton alone and said nothing about Badie's involvement, directly or inferentially. Badie offers no reason to conclude otherwise. See *Wilson v. State*, 322 Ga. 76, 93 (on plain-error review, defendant bears burden of making "an affirmative showing that the error probably did affect the outcome below" (quotation marks omitted)).

We did conclude in *Benton* that the *Miranda* violation was not harmless beyond a reasonable doubt. 302 Ga. at 575 n.8. But that was because Benton's statement "provided substantial supporting evidence of [his] guilt," id., so its improper admission into evidence may have made a meaningful difference in Benton's trial. *Benton*'s harm determination, however, does not apply here. Unlike co-defendant Benton, multiple eyewitnesses identified Badie either as

15

a shooter or as part of the group suspected of carrying out the shooting. And where Benton's statement provided "substantial" evidence of his guilt, id., it provided little—if any—evidence of Badie's guilt. Plus, *Benton*'s harm determination required the State to prove that a preserved *Miranda* violation was harmless beyond a reasonable doubt; this harm determination requires *Badie* to show that an unpreserved Confrontation Clause error likely affected the outcome. He has not carried that burden, so this claim fails under the third prong of plain error review. See *Henderson*, 317 Ga. at 79–80. See also, e.g., *Morris v. State*, 311 Ga. 247, 256 (2021) (rejecting plain error claim based on lack of Confrontation Clause limiting instruction when statement did not directly identify defendant and substantial other evidence supported defendant's guilt).

4. Badie next argues that he received ineffective assistance of counsel when trial counsel failed to request a limiting instruction regarding Benton's statement and when trial counsel failed to move to sever Badie's trial from Benton's. Demonstrating ineffective assistance of counsel requires a defendant to show both that his trial

16

counsel performed deficiently and that said deficiency prejudiced his defense. *Momon v. State*, 322 Ga. 848, 850 (2025). Deficiency requires the defendant to "show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." Id. (quotation marks omitted). This inquiry "focuses on the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Id. (cleaned up). And prejudice requires the defendant to "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quotation marks omitted). Demonstrating ineffective assistance is a "high bar," and if a defendant fails to show either prong, we need not consider the other. Id. (quotation marks omitted).

(a) Badie's first ineffectiveness claim—that trial counsel should have requested a limiting instruction for Benton's statement—fails because we have already concluded that the absence of such an instruction was unlikely to have affected the outcome of Badie's trial. The "test for prejudice in the ineffective assistance analysis is

17

equivalent to the test for harm in plain error review." *Clark v. State*, 315 Ga. 423, 442 (2023) (quotation marks omitted). We concluded above that the absence of a limiting instruction did not harm Badie, so any presumed deficiency caused no prejudice, and this claim fails.

(b) Badie's second ineffectiveness claim also fails because he has not shown that not moving to sever Badie's trial from Benton's was objectively unreasonable. Whether to move for severance is presumptively strategic. *Green v. State*, 302 Ga. 816, 819 (2018). Badie argues that it would have been more advantageous to be tried separately because Benton's statement exculpated Benton and left Badie as the only party on trial for Ramsay's murder.

But an objectively reasonable attorney could have made the strategic decision not to seek severance under these circumstances. The State had difficulty finding witnesses to testify against the co-defendants and other suspected shooters. The State decided not to try co-indictee Domonique Hodo shortly before trial because one witness recanted his identification of Hodo. And, as Badie points out elsewhere in his brief, the State lacked ballistic and forensic

18

evidence linking Badie to the shooting. Badie's attorney could have strategically decided to force the State to proceed to trial, rather than give the State more time to develop its case by locating additional witnesses or securing additional kinds of evidence. See *DeLoach v. State*, 308 Ga. 283, 288–90 (2020) (counsel's strategic decision not to seek severance because he believed his client was "better served" by proceeding to trial and emphasizing gaps in State's case "rather than risking giving the State additional time to strengthen its case" was reasonable and, thus, not deficient performance). We therefore cannot say that no reasonable attorney would have failed to move to sever Badie's trial from Benton's. Benton has failed to show that trial counsel performed deficiently in this respect, and this enumeration fails.

5. Finally, Badie argues that the trial court should have granted him a new trial because, he says, the verdict was "contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, and "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21. But a trial court's decision to grant or deny a new

trial based on these statutes—the general grounds—"is left to the sole discretion of the trial court; our role on appeal is limited to determining whether the trial court exercised that discretion." *Welsch v. State*, 2026 WL 271367, at *4 (quotation marks omitted). The record shows that the trial court clearly did so here, so there is nothing for us to review. Id.

*Judgment affirmed. All the Justices concur.*