309 Ga. 511
FINAL COPY

S20A0782.  BROWN v. THE STATE.

BLACKWELL, Justice.

Melvin Louis Brown, Jr., was tried by an Athens-Clarke County jury and convicted of murder and other crimes in connection with the fatal shooting of Javious Tucker and wounding of Cyntrelis Boggs. Brown appeals, claiming that the trial court plainly erred in its jury charge on his justification defense and when it admitted in-life photographs of Tucker and allowed Tucker's mother to testify about those photographs. Brown also contends that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no reversible error and affirm.[1]

---

[1] The crimes were committed in February 2014. An Athens-Clarke County grand jury indicted Brown in April 2014, charging him with murder with malice aforethought, three counts of felony murder, two counts of aggravated assault, three counts of the unlawful possession of a firearm during the commission of a felony (under OCGA § 16-11-133 (b)), one count of terroristic acts, and one count of the unlawful possession of a firearm by a convicted felon. At Brown's first trial, he was found guilty on all counts, but his convictions were reversed by this Court because the trial court erroneously

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows that, on the afternoon of February 2, 2014, Brown was visiting the Athens house that his aunt shared with Tucker's father. It was Super Bowl Sunday, and Tucker also dropped by the house, accompanied by his friend Boggs. Shortly thereafter, Brown and Tucker got into an argument over a bag of pork skins. After Brown eventually "grabbed [Tucker] by his shirt and jacked him up on [a] car," family members separated the two men, and Brown walked away from his aunt's house and down the street toward another house. Tucker followed in his car—a Honda

admitted evidence of multiple aggravated assaults committed by Brown in 2005. See Brown v. State, 303 Ga. 158 (810 SE2d 145) (2018). Brown was retried in November 2018, and he again was found guilty on all counts. The trial court sentenced Brown to imprisonment for life without the possibility of parole for malice murder, a consecutive term of imprisonment for 20 years for aggravated assault upon Boggs, and a consecutive term of imprisonment for 15 years for the unlawful possession of a firearm during the commission of a felony. The felony murder counts were vacated by operation of law, and the trial court ruled that the remaining counts were vacated or merged, rulings that have not been challenged on appeal and that we decline to address. See Dixon v. State, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017). Brown timely filed a motion for new trial in November 2018, which he amended in June 2019. The trial court denied that motion in November 2019, and Brown timely filed a notice of appeal. The case was docketed in this Court for the April 2020 term and submitted for decision on the briefs.

Accord—with Boggs in the passenger seat. Brown tried to open the door to the Honda and challenge Tucker to fight, but Tucker would not unlock the door. When Brown began to walk away, Tucker grabbed a tire iron from the trunk of the Honda. In response, Brown ran off to get a semi-automatic handgun from the trunk of his Oldsmobile. Brown returned as Tucker was driving down the street, and Brown fired nine shots into Tucker's Honda. Tucker was fatally shot in his chest, and Boggs was injured.

Brown fled in his Oldsmobile, which he eventually abandoned, and he remained on the run for several days. A few days later, Brown's brother arranged for a nephew to drive Brown to Atlanta. Brown—who was disguised in a "woman's wig," dress, and costume jewelry—told the nephew that he regretted what he had done in connection with the shooting, and Brown was arrested on his way to Atlanta. At trial, Brown argued that he killed Tucker in self-defense, and alternatively that he committed only voluntary manslaughter and not murder.

Brown does not dispute that the evidence is sufficient to

sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence.[2] We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Brown was guilty of the crimes of which he was convicted. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Brown claims that the trial court plainly erred when it instructed the jury about his justification defense because the instruction was inconsistent with <u>Johnson v. State</u>, 308 Ga. 141 (839 SE2d 521) (2020). In <u>Johnson</u>, we held that, pursuant to OCGA § 16-11-138, "circumstances sufficient to justify a threat or use of force in defense of self that would otherwise be unlawful also may be sufficient to justify the possession or carrying of a firearm [by a

---

[2] We remind litigants that this Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See <u>Davenport v. State</u>, ___ Ga. ___ (___ SE2d ___) (2020). This Court began assigning cases to the December term on August 3, 2020.

convicted felon].” Id. at 144. Because the jury in his case was not instructed that justification could be a defense to possession of a firearm by a convicted felon, Brown speculates that the jury might have rejected his justification defense based on a belief that he (as a convicted felon) was not entitled to assert it. Brown acknowledges that he did not object to the justification charge at his trial, but he asserts that the charge was plainly erroneous. See OCGA § 17-8-58 (b).

Our decision in Johnson was based upon our understanding of “the rule of law produced by the combination of OCGA §§ 16-3-21 and 16-11-138.” Johnson, 308 Ga. at 146. But Brown shot Tucker in February 2014, and the Safe Carry Protection Act of 2014 — of which OCGA § 16-11-138 was a part — did not become law until July 2014. See Ga. L. 2014, p. 599. Consequently, the Safe Carry Protection Act has no application in this case, and Brown was not entitled to any instruction under Johnson about whether he might have been justified in possessing a firearm in February 2014. The jury instruction on justification was not clearly erroneous under

Johnson. See Anthony v. State, 303 Ga. 399, 412 (12) (811 SE2d 399) (2018).

3. Brown also claims that the trial court plainly erred when it allowed Tucker's mother to testify about two in-life photographs of Tucker and when it admitted the photographs into evidence. Although Brown did not object to the mother's testimony or the admission of the photographs at trial, he now asserts that the trial court plainly erred because the testimony and photographs were irrelevant under OCGA § 24-4-401 and because any probative value was "substantially outweighed by the danger of unfair prejudice" under OCGA § 24-4-403.

Even if Brown could show that the testimony or photographs were admitted erroneously, that the error was not affirmatively waived, and that the error was clear and obvious, he has not shown that the testimony or photographs likely affected the outcome of his trial. See, e.g., Davis v. State, 305 Ga. 640, 643 (2) (827 SE2d 265) (2019) (setting forth the test for plain error). The testimony that Tucker's mother provided about the photographs was limited; she

testified only that the photographs portrayed "[her] and [Tucker] at [her] 40th birthday party," and she answered in the affirmative when the prosecuting attorney asked if the photographs depicted Tucker "as he appeared in life" and if one of the photographs depicted her and Tucker dancing at the birthday party.[3] And Brown has not shown (or alleged) that anything in particular about the photographs themselves was likely to affect the outcome of his trial. As a result, Brown has not established plain error. See Bozzie v. State, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017).

4. Finally, Brown claims that he was denied the effective assistance of counsel when his trial lawyer failed to impeach Boggs with his prior testimony. To prevail on a claim of ineffective assistance, Brown must prove both that the performance of his

---

[3] Tucker's mother also testified that she did not know if Tucker spent much time with his father, that she would occasionally drop Tucker off at the Athens house that his father shared with Brown's aunt (although she did not know Brown or his aunt), that she had met Boggs on at least one occasion and knew him to be a friend of Tucker, and that she "refused" to talk to investigators when she found out that Tucker had been killed. To the extent that Brown claims that the trial court plainly erred when it allowed this testimony, he has not argued (or shown) that the testimony likely affected the outcome of his trial.

lawyer was deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Brown must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Brown must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Brown has failed to carry it.

In response to a question from the prosecuting attorney about what he "saw or heard" just before the shooting, Boggs testified that he could not see the shooter because of the glare from the sun. As to

what he heard just before the shooting, Boggs testified that someone said "Motherf***er, you done got — I ain't playing," and that the voice was the same as the voice of the person "that was fussing over the pork skins."

Brown now claims that he was denied the effective assistance of counsel when his lawyer failed to impeach Boggs with inconsistent testimony that Boggs provided at Brown's first trial. But at the hearing on Brown's motion for new trial, Brown did not question his trial lawyer about why he did not impeach Boggs with any prior testimony,[4] he did not present any evidence from Boggs himself, and he did not offer any prior testimony into evidence to show that it was inconsistent with the testimony that Boggs provided at Brown's second trial. As a result, Brown has failed to establish that Boggs could have been successfully impeached with any prior testimony or that the trial lawyer's performance was

---

[4] As to his general strategy for cross-examining Boggs, the trial lawyer noted that Boggs appeared to be "psychologically fragile" and "very frazzled from the event."

constitutionally deficient for not attempting such impeachment. See

Daughtry v. State, 296 Ga. 849, 861 (2) (j) (770 SE2d 862) (2015)

(appellant failed to establish deficient performance based upon

failure to impeach witness where appellant "relied on hearsay

summaries as to the content of those allegedly inconsistent

statements").

Judgment affirmed. All the Justices concur.


DECIDED AUGUST 10, 2020.
Murder. Clarke Superior Court. Before Judge Haggard.
*Barbara Mattes*, for appellant.
*Brian V. Patterson, Acting District Attorney; Christopher M.
Carr, Attorney General, Patricia B. Attaway Burton, Deputy
Attorney General, Paula K. Smith, Senior Assistant Attorney
General, Eric C. Peters, Assistant Attorney General*, for appellee.